UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

SARAH BOUNDS                                           CIVIL ACTION

VERSUS                                                 NO. 14-802-JJB-RLB

CAPITAL AREA FAMILY VIOLENCE
INTERVENTION CENTER, INC. d/b/a
IRIS DOMESTIC VIOLENCE CENTER
OF BATON ROUGE AND AUDREY WASCOME

## ORDER

Before the court is Plaintiff's Consolidated Motion to Compel Responses to Discovery from Defendants Iris and Wascome and for Expedited Consideration (R. Doc. 30) filed on January 4, 2016. The motion is opposed. (R. Doc. 33). Plaintiff has filed a Reply. (R. Doc. 45). Plaintiff has also filed a supplemental memorandum providing deposition testimony. (R. Doc. 50).

The court's Scheduling Order set non-expert discovery to close on February 12, 2016 and expert discovery to close on March 31, 2016. The instant motions were timely filed.

**I.    Background**

In her Amended Complaint, Sarah Bounds ("Plaintiff") alleges that she was an employee of defendant Capital Area Family Violence Intervention Center, Inc. d/b/a Iris Domestic Violence Center of Baton Rouge ("Iris"). (R. Doc. 10, "Am. Compl."). Plaintiff was six months pregnant when she was hired in August of 2013 by Judy Benitez, Iris's former Executive Director and Plaintiff's former direct supervisor. (Am. Compl., ¶ 7). Plaintiff began work on

September 3, 2013. (Am. Compl., ¶ 8). Plaintiff alleges that Danna Leblanc, an Iris Board member and President, began micromanaging her work and was critical of Benitez's decision to hire Plaintiff because Plaintiff was "too distracted by pregnancy to be a good worker." (Am. Compl., ¶¶ 10-11).

Plaintiff went on six weeks of maternity leave from November 27, 2013 through January 13, 2015, and was paid for work performed while on maternity leave. (Am. Compl., ¶¶ 12-15). Plaintiff alleges that she developed symptoms of post-partum depression and sought the help of a therapist. (Am. Compl., ¶ 15). Plaintiff claims that she informed defendant Audrey Wascome, an Iris board member and Vice President, of her post-partum depression in February of 2014. (Am. Compl., ¶ 16). Plaintiff further alleges that Heather Folks, an Iris volunteer and Iris Board member, was critical of Benitez for allowing Plaintiff to take "paid" maternity leave. (Am. Compl., ¶ 17).

In May of 2014, Plaintiff became "a domestic violence client of Iris, having experienced domestic violence from her spouse." (Am. Compl., ¶ 23). Plaintiff alleges that Juanita McCray was the nonresidential client advocate who took over Plaintiff's case and allegedly told Plaintiff that only the two of them would have access to Plaintiff's domestic violence file. (Am. Compl., ¶ 23).

On September 25, 2014, Plaintiff had a nightmare about her husband that she discussed with her co-worker Connie Falcon, a legal assistant, who subsequently reported these discussions to McCray. (Am. Compl., ¶¶ 31-34). Plaintiff alleges that McCray, along with Koreen Scott, another domestic violence advocate, then asked Plaintiff if she would like to stay in a hotel away from her spouse in light of her domestic violence claims. (Am. Compl., ¶ 34). After meeting her husband for lunch, Plaintiff was summoned back to the office by Kim Wells, Iris's Director of

Outreach. (Am. Compl., ¶ 35). Upon returning to work, Plaintiff was taken into custody by East Baton Rouge Parish sheriff's deputies, who showed her an Order of Protective Custody ("OPC") signed by the coroner and an attached affidavit written out by Falcon. (Am. Compl., ¶¶ 37-38). Plaintiff alleges that Falcon's affidavit states that Plaintiff "was homicidal and suicidal that day, that she indicated she felt like hurting herself, and that she hoped to make her husband kill her." (Am. Compl., ¶ 39). Plaintiff further alleges that defendant Wascome was responsible for conveying this information to the coroner to obtain the OPC. (Am. Compl., ¶ 41).

Upon returning home from protective custody, Plaintiff received a letter from Leblanc stating that Plaintiff had been placed on administrative leave until October 10, 2014 in light of the incident. (Am. Compl., ¶ 67). Plaintiff further alleges that representatives of Iris subsequently "contacted Baton Rouge police and made a criminal complaint of [Plaintiff] allegedly preparing and issuing requested emergency financial assistance checks to Iris's client abuse survivors without [Plaintiff] having authority to do so." (Am. Compl., ¶ 92).

Plaintiff asserts that she was discriminated and retaliated against in light of her disability of depression in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101 *et seq.* ("ADA"), and Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 (the "Rehabilitation Act"). (Am. Compl., ¶¶ 93-99, 102-103). Plaintiff also asserts pregnancy and gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"). (Am. Compl., ¶¶ 100-101, 103). Finally, Plaintiff alleges claims for defamation and abuse of process under Louisiana tort law. (Am. Compl., ¶¶ 104-105).

On August 28, 2015, Plaintiff served Defendants Iris and Wascome with respective sets of Requests for Production of Documents. (R. Doc. 30-2; R. Doc. 30-6).

On October 16, 2015, Iris provided their written responses. (R. Doc. 30-3). On October 23, 2015, Wascome provided her written responses. (R. Doc. 30-7). Plaintiff asserts that both Iris and Wascome's responses were incomplete, and Wascome's responses were untimely. (R. Doc. 30 at 2).

On December 3, 2015, Plaintiff served supplemental interrogatories and requests for productions on Iris and Wascome. (R. Doc. 30-4; R. Doc. 30-8). On December 16, 2015, Iris and Wascome responded to the supplemental interrogatories and requests for production. (R. Doc. 30-5, 30-9).

On January 4, 2016, Plaintiff filed the instant motion to compel. Plaintiff seeks to compel complete responses to Request Nos. 6, 18, 51, 53, and 61 of her First Set of Requests for Production to Iris, and Request No. 24 to her First Set of Requests for Production to Wascome.

## II. Law and Analysis

### A. Legal Standards

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).[1] The court must limit the frequency or extent of discovery if it determines that: "(i) the

---

[1] The current version of Rule 26(b)(1) became effective on December 1, 2015. The former version of Rule 26(b)(1) did not contain the "proportional to the needs of the case" language in defining the scope of discovery. The former version of the rule nevertheless provided that the district court must "limit the frequency or extent of discovery" if it determined that "the burden or expense of the proposed discovery

4

discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

Rule 34 of the Federal Rules of Civil Procedure provides for the discovery of documents and tangible items. A party seeking discovery must serve a request for production on the party believed to be in possession, custody, or control of the documents or other evidence. Fed. R. Civ. P. 34(a). The request is to be in writing and must set forth, among other things, the desired items with "reasonable particularity." Fed. R. Civ. P. 34(b)(1)(A).

Rule 34 provides a party with 30 days after service of the discovery to respond or object. *See* Fed. R. Civ. P. 34(b)(2)(A). If a party fails to respond fully to discovery requests made pursuant as to Rules 34 in the time allowed by the Federal Rules of Civil Procedure, the party seeking discovery may move to compel disclosure and for appropriate sanctions under Rule 37.

---

outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Rule 26(b)(2)(C)(iii) (former version). For the purpose of the instant motions, the same result would follow regardless of which version of Rule 26 was applied.

An "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4).

### B.  Plaintiff's Requests for Production to Iris

#### 1.  Request for Production No. 6

Plaintiff's Request for Production No. 6 requests the personnel files for Plaintiff, Audrey Wascome, Connie Falcon, Judy Benitez, Dana Leblanc, Juanita McCray, Heather Folks, Kim Wells, and Koreen Scott. (R. Doc. 30-2 at 6-8). Plaintiff listed several categories of employment-related information that may or may not be included in the personnel files, including these individuals' hiring interviews, resumes and references, and job descriptions.

Iris objected to this discovery request on the basis that it was "unduly burdensome, vague, overbroad, and not reasonably calculated to lead to discovery of admissible evidence." (R. Doc. 30-3 at 6). In addition, Iris objected on the basis that two of the individuals identified (Leblanc and Folks) are not Iris employees. (R. Doc. 30-3 at 6). Iris produced Plaintiff's personnel files, but did not produce any files or documents for the other identified individuals.

Plaintiff represents that in her supplemental request she stated that the "only person for whom Iris provided information is the Plaintiff" and that with regard to Folks, Leblanc, and Wascome, Iris needed to supplement its production to include documents sought pertaining to board members. (R. Doc. 30-1 at 5). In its supplemental response, Iris sated that it was withholding the requested employee files as "confidential and private" and again asserted that it did not have information regarding its board members as requested "because they were either never created or because they were impermissibly removed from Iris's premises," and to the extent such files "were created for Leblanc and Folks, who are still board members, they were

6

created after the alleged incident and are therefore not reasonably calculated to lead to the discovery of admissible evidence." (R. Doc. 30-5 at 3).

In support of her motion to compel, Plaintiff asserts that Wascome, Falcon, McCray, Wells, and Scott were "directly involved in the events of September 25, 2014, the day Plaintiff was subjected to the OPC" and that each "had input into decisions" regarding Plaintiff's employment status. (R. Doc. 30-1 at 5-6). Plaintiff further asserts that Wascome and Wells were supervisors on duty on September 25, 2014, and that Benitez was Plaintiff's supervisor until she was terminated on September 10, 2014. (R. Doc. 30-1 at 6). Finally, Plaintiff asserts that Falcon, McCray, and Scott were Iris staff members who "participated in the decision to go to the coroner's office and falsely report Plaintiff for being homicidal and suicidal." (R. Doc. 30-1 at 6).

Defendants assert that any alleged unlawful actions of Wascome, Falcon, McCray, Wells, and Scott were limited to the events of September 25, 2014, and that these individuals have not been referenced in Plaintiff's pleadings with regard to Plaintiff's pregnancy or discrimination claims. (R. Doc. 33 at 4). Defendants represent that they have produced all documents concerning these individual's "observations and the procedures they followed" on September 25, 2014. (R. Doc. 33 at 4). Defendants argue that Wells was not a decision-maker as to Plaintiff, and had no influence on the ultimate decision makers with regard to Plaintiff. (R. Doc. 33 at 3). Finally, Defendants represent that defendant Wascome was not an employee of Iris and, despite being an Iris Board member, "no board file was ever completed for Ms. Wascome by the person charged with that responsibility." (R. Doc. 33 at 5).

To establish a *prima facie* case of discrimination, a plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for the employment position at issue; (3) she

suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees outside of her protected group. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). A plaintiff may establish a prima facie case of discrimination by showing that other employees outside of ehr protected class "who engaged in similar acts," known as similarly situated comparators, were treated more favorably. *Mayberry v. Vaught Aircraft Co.,* 55 F.3d 1086, 1090 (5th Cir. 1995) (plaintiff must show that similarly situated employees "were treated differently under circumstances 'nearly identical' to his"). In the context of comparators, the Fifth Circuit has explained that "nearly identical" circumstances does not equate to completely "identical," as such a "requirement would be essentially insurmountable." *Tuner v. Kansas City Southern Ry. Co.* 675 F.3d 887, 893 (5th Cir. 2012) ("This Circuit's nearly identical standard is not equivalent to identical."). Rather, two employees engaged in some conduct of "comparable seriousness" and who, at the time, hold the "same" or "materially" similar responsibilities are similarly situated comparators. *Turner*, 675 F.3d at 896 ("Each employee's track record at the company need not comprise the identical number of identical infractions.") (internal citations omitted).

     Personnel files are generally discoverable in Title VII litigation, as they could provide circumstantial evidence of pretext, such as revealing disparate treatment of coworkers who were guilty of infractions more serious than that of the plaintiff. *Coughlin v. Lee,* 946 F.2d 1152, 1159 (5th Cir. 1991) ("In Title VII litigation, in which plaintiffs are similarly required to demonstrate pretext, courts have customarily allowed a wide discovery of personnel files. All or some parts of [other employees'] personnel files could be central to the plaintiffs' effort to prove pretext."). Personnel files for supervisors are also discoverable to the extent they include performance evaluations, disciplinary actions, or records of employee complaints. *See Dixon v. Albermarle*

*Corp.*, No. 04-0170, 2005 WL 1503470 (S.D. Tex. June 7, 2005).  Finally, under the cats' paw theory of liability, a plaintiff can establish an employer's liability where another employee with retaliatory animus influenced an actual decisionmaker to take retaliatory or discriminatory action against the plaintiff. *Zamora v. City Of Houston*, 798 F.3d 326, 332 (5th Cir. 2015).

Based on the foregoing, the court concludes that that Plaintiff is entitled to discovery of certain aspects of the personnel files of the employees, supervisors, volunteers, and/or board members identified in the Amended Complaint.  All of the foregoing individuals are identified by Plaintiff in the Complaint as having some role in the events leading to her placement in protective custody and/or her subsequent suspension and termination.  Accordingly, Plaintiff is entitled to obtain information in these individuals' personnel files to the extent the information bears upon the events concerning Plaintiff's placement in protective custody and/or her subsequent suspension and termination.

That said, Plaintiff's request for personnel files and related employment information as written is overly broad and seeks information outside the scope of discovery in this action. Plaintiff offers no convincing basis for the relevance of the foregoing individuals' entire personnel files and, among other things, employment applications, memoranda on their interviews, resumes, lists of references, injuries and illnesses, performance ratings, compensation changes, and awards.  There is nothing to indicate that these individuals' job performances or qualifications would have any bearing on Plaintiff's claims in this case.  Plaintiff does not identify these individuals as similarly situated to Plaintiff.  Plaintiff does not allege that any of these individuals were hired into Plaintiff's position after she was terminated.[2]

---

[2] To the extent any one of these individuals was hired into Plaintiff's former position, the comparator evidence sought in Request for Production No. 53 will supersede the limitations imposed herein on the response to Request for Production No. 6.  Similarly, to the extent any one of these individuals is in a position "substantially similar" to Plaintiff's former position, the pretext and/or comparator evidence

9

Accordingly, the court will limit Plaintiff's requests for personnel files and related volunteer/board/employment information to any documents pertaining to Plaintiff's placement in protective custody and/or her subsequent suspension and termination, including any information regarding the relevant individual's decision or input on the suspension or firing of Plaintiff.[3] Should any information be produced from Iris's volunteer/board/employment records pursuant to the foregoing limited scope, Iris may redact the following information prior to production: social security numbers, taxpayer-identification numbers, dates of birth, the names of minors, financial-account numbers, and home addresses.  The parties are reminded that any filing with the court, whether under seal or not, must redact the foregoing personal data identifiers as provided by rule or order.  *See* Fed. R. Civ. P. 5.2(a); LR 5.2; General Order No. 04-7.  In addition, Iris may designate any responsive documents as containing protected "confidential information" in compliance with the Protective Order (R. Doc. 29) entered in this action.

### 2.     Request for Production No. 53

Plaintiff's Request for Production of Documents No. 53 seeks the entire personnel file for the employee who took over Plaintiff's job, together with "documents reflecting each such person's qualifications, pay tasks, assignments, and disability or pregnancy status." (R. Doc. 30-2 at 16).  Iris objected to this request on the basis that the request was not reasonably calculated

---

sought in Request for Production No. 18 will supersede the limitations imposed herein on the response to Request for Production No. 6.

[3] Iris suggests that it does not have any information to provide regarding defendant Wascome because she was a volunteer and not an employee, and, to the extent she was an Iris Board member, "no board file was ever completed for Ms. Wascome by the person charged with that responsibility." (R. Doc. 33 at 5).  Iris must provide any documents in its possession, custody, or control responsive to Request for Production No. 6 that specifically pertain to Plaintiff regardless of whether the information is contained in an "employee" file, "volunteer" file, or any similar file.  To the extent Iris cannot produce documents because they do not exist, Iris must supplement its response by informing Plaintiff of such.

to lead to the discovery of admissible evidence and it sought "personal and confidential information." (R. Doc. 30-3 at 25).

Plaintiff represents that in her supplemental request, she indicated that the information sought was "comparator evidence" and should be provided, and that any confidentiality concerns are governed by the protective order in place. (R. Doc. R. Doc. 30-1 at 13). Iris again refused to provide responses on the basis that doing so would invade the privacy of its employees. (R. Doc. 30-5 at 7).

In a job replacement case, a plaintiff can meet her burden of creating an issue of fact by showing he was "clearly better qualified" than the employee who replaced plaintiff. *Nichols v. Loral Vought Systems Corp.*, 81 F.3d 38, 42 (5th Cir. 1996) ("A genuine issue of material fact exists when evidence shows the plaintiff was 'clearly better qualified' than younger employees who were retained."); *EEOC v. Louisiana Office of Community Servs.*, 47 F.3d 1438, 1444 (5th Cir. 1995) ("fact finder can infer pretext if it finds that the employee was 'clearly better qualified' than the employees who are selected."). A court should be reluctant to find another employee "clearly better qualified" unless "disparities in curricula vitae are so apparent as virtually to jump off the page and slap us in the face." *Louisiana Office of Community Servs.*, 47 F.3d at 1445 (quoting *Odom v. Frank*, 3 F.3d 839, 847 (5th Cir. 1993)).

Request for Production No. 53 seeks relevant information within the scope of discovery. Plaintiff is entitled to the comparator evidence requested to determine whether she was "clearly better qualified" than the employee who replaced her. Iris's concerns regarding the personal and confidential information in the employee files can be addressed by identifying the information as "confidential" pursuant to the Protective Order in place in this litigation.

Based on the foregoing, the court will compel Iris to comply with Request for Production No. 53 to the extent it requests documents reflecting the replacement employee's "qualifications, pay tasks, assignments, and disability or pregnancy status."  In addition, Iris may designate any responsive documents as containing protected "confidential information" in compliance with the Protective Order (R. Doc. 29) entered in this action.

### 3.      Request for Production No. 18

Plaintiff's Request for Production of Documents No. 18 seeks documents relating to any "similar incidents of deficient performance and/or misconduct by employees" in the "same or substantially similar job" that were disciplined by managers at Iris. (R. Doc. 30-2 at 10).  In response, Iris directed Plaintiff to see its responses to Plaintiff's Request for Production No. 3, which dealt exclusively with the counseling or disciplining of Plaintiff. (R. Doc. 30-3 at 3).

Plaintiff represents that in her supplemental request she informed Iris that the response was incomplete because it only references documents pertaining to Plaintiff.  (R. Doc. 30-1 at 9). Iris's supplemental response stated that its responses to Request for Production No. 3 included information regarding the "deficient performance of Judy Benitez, who was the executive director [Plaintiff's] employment and who was [Plaintiff's] immediate supervisor." (R. Doc. 30-5 at 5).

Plaintiff argues that Benitez was not in the same or substantially similar job as Plaintiff, and, accordingly, Iris has not responded to the request at issue. (R. Doc. 30-1 at 10).  Plaintiff is correct that the information sought in this discovery request is relevant to demonstrating pretext and/or demonstrating that Plaintiff was treated less favorably than similarly situated employees outside her protected group. *See Coughlin*, 946 F.2d at 1159; *Mayberry*, 55 F.3d at 1090.  Iris's concerns regarding the personal and confidential information in the employee files can be

12

addressed by identifying the information as "confidential" pursuant to the Protective Order in place in this litigation.

Based on the foregoing, the court will compel Iris to comply with Request for Production No. 18 in full by providing the requested documents for employees with a substantially similar position as Plaintiff. In addition, Iris may designate any responsive documents as containing protected "confidential information" in compliance with the Protective Order (R. Doc. 29) entered in this action.

### 4. Request for Production No. 51

Plaintiff's Request for Production No. 51 seeks "any and all documents reflecting, indicating, or referring to Defendant's net worth." (R. Doc. 30-2 at 16). Iris objected on the basis that the request sought confidential information and that it was not reasonably calculated to lead to discovery of admissible evidence. (R. Doc. 30-3 at 24).

Plaintiff represents that in her supplemental request she asserted that the request was relevant to the issue of punitive damages provided by the relevant employment discrimination laws. (R. Doc. 30-1 at 10-11). Iris responded by stating that net worth is not discoverable for purposes of Plaintiff's punitive damage allegation pursuant to Title VII and the ADA. (R. Doc. 30-5 at 6).

Iris's position is without merit. The Civil Rights Act of 1991 provides that punitive damages may be awarded in cases of intentional discrimination "if the [plaintiff] demonstrates that the [defendant] engaged in a discriminatory practice . . . with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). Information regarding a defendant's net worth in an employment case is "relevant, discoverable, and admissible at trial to evaluate a plaintiff's punitive damages claim." *Jackson v.*

*Wilson Welding Service, Inc.*, No. 10-2843, 2011 WL 5024360 at *3 and n. 2 (E.D. La. Oct. 20, 2011); *see also Singleton v. RPM Pizza, Inc.*, No. 03-2219, 2004 WL 169802 (E.D. La. Jan. 26, 2004) (finding defendant's financial status relevant and reasonably calculated to lead to the discovery of information relevant to plaintiff's punitive damages claim and ordering defendant to produce its annual reports, financial statements, and federal income tax returns)

Based on the foregoing, the court will compel Iris to respond to Request for Production No. 51 by providing its most recent federal income tax return and its most recent audited financial statements and/or audit report.  In addition, Iris may designate its federal income tax return and audited financial statements and/or audit report as containing protected "confidential information" in compliance with the Protective Order (R. Doc. 29) entered in this action.

### 5. Request for Production No. 61

Plaintiff's Request for Production of Documents No. 61 seeks "Form 990 for 2014 and your audit prepared by an independent auditor for your most recent fiscal year." (R. Doc. 30-2 at 17).  Iris objected on the basis that it is not reasonably calculated to lead to discovery of admissible evidence. (R. Doc. 30-1 at 11).

Plaintiff represents that in her supplemental request she informed Iris of an IRS Regulation requiring tax-exempt organizations to produce Form 990 within 30 days of request. (R. Doc. 30-1 at 11).  In response, Iris produced its Form 990, but still did not produce the requested audit. (R. Doc. 30-5 at 7).

As discussed above, information regarding a defendant's net worth, such as audited financial statements, is discoverable. *See Singleton*, 2004 WL 169802, at *2.  Furthermore, Iris's own policy states that its audit report would be "made available to the general public as requested or required." (R.Doc. 30-13).

14

Based on the foregoing, the court will require Iris to supplement its response to Request for Production No. 61 by providing its most recent audited financial statements and/or audit report. As stated above, Iris may designate its audited financial statements and/or audit report as containing protected "confidential information" in compliance with the Protective Order (R. Doc. 29) entered in this action.

      **C.**      **Plaintiff's Requests for Production to Wascome**

Plaintiff's Request for Production No. 24 seeks "mobile phone bills insofar as they show calls pertaining to Sarah Bounds for the time period September and October 2014." (R. Doc. 30-6 at 9). Wascome objected on the basis that the request was not limited in scope of time, but agreed to produce her phone bills for September and October 2014 after they were redacted to remove unresponsive and irrelevant information. (R. Doc. 30-7 at 13). Wascome produced 134 pages of AT&T bills with heavy redactions, including redactions to text and phone calls on September 25, 2014 (the day Plaintiff was placed in protective custody) up to and until October 2, 2014 (the day Plaintiff was terminated). (R. Doc. 30-16).

In her supplemental request, Plaintiff states that Wascome's response "appears to be inadequate in that responsive information has been redacted" and requests the production of un-redacted information. (R. Doc. 30-8 at 5). Wascome responded by stating that the supplemental request is repetitive of the original request and that she had "produced all documents responsive to this Request in her prior responses to discovery." (R. Doc. 30-9 at 4). Furthermore, in response to another supplemental request pertaining to another document request, Wascome stated that because she shares a phone account with her husband, a doctor, she withheld records protected by HIPPA, as well as her personnel calls that have nothing to do with this case. (R. Doc. 30-9 at 4).

15

Plaintiff asserts that defense counsel has confirmed that Wascome and her husband do not share the same cell phone number. (R. Doc. 30-1 at 16). Plaintiff further asserts that defense counsel has represented that the redactions on the produced AT&T bills were made by Wascome with no involvement of counsel. (R. Doc. 30-1 at 15 n. 7).

Wascome represents that "she produced her phone records for the two months sought by plaintiff and identified the phone calls/texts that she made or responded to about Sarah Bounds" and "redacted the others, which include calls made to and from her husband, children, friends, and Iris, as well as calls made by her husband, a physician, regarding patients." (R. Doc. 33 at 9). In reply, Plaintiff represents that Wascome "testified in her recent deposition that she called the coroner, as well as her husband's boss, a physician at Our Lady of the Lake ("OLOL"), regarding Plaintiff" and that these calls were apparently redacted on the telephone bills provided. (R. Doc. 37-2 at 5).

There is no dispute regarding the relevance of the information sought by the original discovery request. Instead, the parties dispute whether Wascome redacted, and thus wrongly withheld, responsive information.[4] The phone calls and text messages at issue were made well over one year prior to production. Accordingly, the court finds it appropriate to require Wascome to produce phone call and text message records to pertinent individuals and entities regardless of whether Wascome recalls that the underlying discussions concerned Plaintiff. The court finds the temporal scope of the original request to be too broad, however, and will limit it

---

[4] Plaintiff further argues that Wascome's responses were untimely and that she has waived her objections. (R. Doc. 30-1 at 13-14). Wascome disputes this contention in light of Plaintiff's counsel's silence with regard to a requested third extension. (R. Doc. 33 at 8). As the court finds Wascome's objections regarding HIPPA and privacy concerns to be unmerited with regard to phone calls and text messages made by Wascome on her own phone that are responsive to the discovery request, the court need not determine whether Wascome waived her objections. The sole issue the court needs to address is whether Wascome's redactions are appropriate in light of the information sought by the discovery request.

16

to the relevant period of September 18, 2014 (one week prior to the date Plaintiff was placed in protective custody) through October 2, 2014 (the day Plaintiff was terminated).

Based on the foregoing, the court will require Wascome to supplement her production after an additional review, by her counsel, of her AT&T mobile phone records.  Defense counsel must review Wascome's AT&T mobile phone records and produce, in unredacted form, any records of phone calls and/or text messages made by or to Wascome on her mobile phone for the period of September 18, 2014 through October 2, 2014, to or from (1) any Iris employee, volunteer, or board member identified in the Amended Complaint; (2) any physicians at Our Lady of the Lake; (3) the coroner or any employee of the coroner; or (4) any member of any Baton Rouge law enforcement agency, including the Baton Rouge Police Department or East Baton Rouge Parish Sheriff's Office.  Wascome and her counsel need not produce any telephone records made on her husband's mobile phone, as there is no evidence in the record that Wascome made any relevant calls on that phone.  In addition, Wascome and her counsel may redact any records of phone calls or text messages made on Wascome's phones to individuals not identified above.  Finally, to the extent Wascome finds the information to be produced is "confidential" in accordance with the terms of the Protective Order, she may identify the documents as such.

## III.   Conclusion

**IT IS ORDERED** that Plaintiff's Consolidated Motion to Compel Responses to Discovery from Defendants Iris and Wascome and for Expedited Consideration (R. Doc. 30) is **GRANTED IN PART and DENIED IN PART**.  The parties shall bear their own costs.

**IT IS FURTHER ORDERED** that Iris must provide complete and/or supplemental responses to Plaintiff's Requests for Production Nos. 6, 18, 51, 53, and 61 on or before **March 31, 2016**.

**IT IS FURTHER ORDERED** that Wascome must provide supplemental responses to Plaintiff's Requests for Production No. 24 on or before **March 31, 2016**.

**IT IS FURTHER ORDERED**, pursuant to Rule 16(b)(4), that the deadline to complete non-expert discovery is extended to **April 14, 2016** for the limited purpose of completing the depositions of Connie Falcon and Juanita McCray, if necessary.[5]

Signed in Baton Rouge, Louisiana, on March 18, 2016.

 

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

---

[5] The parties indicate that Plaintiff had noticed the depositions of Falcon and McCray to take place on January 7, 2016, but those depositions have been rescheduled in light of this discovery dispute. (R. Doc. 30-1 at 8-9; R. Doc. 33 at 4).